NATIONAL COUNCIL, JUNIOR ORDER UNITED
AMERICAN MECHANICS, A BODY CORPORATE,

*vs.*

KATIE N. BARBOUR.

*Benevolent order*: *rules; construction of—.*

The rules of a benevolent society, briefly speaking, provided
that no claims could be made against it for the death of a
member from any disease, which had demonstrated itself prior
to his admission or reinstatement therein; it further provided
that when a member was in arrears in his dues to a certain
amount, it should amount to a disqualification as to all sick
or death benefits on his account, until three months after the
arrears and all current dues should have been paid. A member
who was in arrears complied with the rules for reinstatement,
and subsequently died of tuberculosis; there being no proof that
he was afflicted with that malady before his admission into the
order, it was: *Held,* that his beneficiaries were entitled to re-
cover the death benefits.                                    p. 103

*Decided December 1, 1915.*

Appeal from the Court of Common Pleas of Baltimore
City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Arthur L. Jackson,* for the appellant.

*W. Harry Holmes,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This suit was instituted to recover from the appellant the sum of five hundred dollars, being the amount claimed to be due, as a funeral benefit, upon the death of John G. Pietsch, to the appellee as widow and beneficiary.

Mr. Pietsch had become a member of Liberty Bell Council No. 147, a local council of the Junior Order of United American Mechanics, and had received a certificate of membership from the council whereby the said council promised "to pay at the death of said Brother to Katie Pietsch (wife) such sum as is due under the laws of this Council at the time of his death; provided, however, that the said Brother has complied with all requirements of the Council and is not in arrears at the time of his death." Liberty Bell Council was a member of the Funeral Benefit Department, a subsidiary association created by virtue of the constitution and laws of the National Council, Jr. O. U. A. M., and whereby each member of the local council enrolled as a member of the Funeral Benefit Department was to have paid, at his death, five hundred dollars to his dependent. No medical or physical examination was required for membership. Mr. Pietsch, by virtue of his membership in the local council, became at the same time an enrolled member thereof. The dues for each member of the Funeral Benefit Department were paid by the local council out of the dues received by it from its members. By section 4 of Article 4 of the By-Laws of Liberty Council, the annual dues were fixed at nine dollars, payable weekly; and by section 5 of the same article it was made the duty of each member to pay his dues on or

before the last meeting night in each quarter, the year being divided into quarters, each ending on the last meeting nights in March, June, September and December. And it was provided in said section: "Any brother owing thirteen weeks or more dues shall not be entitled to receive sick or death benefits until three months after paying all arrears in full to date of payment." Section 6 of the same article provides that when it should appear from the books that a brother was non-beneficial the financial secretary should notify the councilor of that fact "who should instruct the recording secretary to drop his name from the roll of the Funeral Benefit Department, Class B, and said brother's name shall not be entered on roll of said association until he becomes beneficial in the council."

The sick benefits as provided in the by-laws of the council are found in section 1 of Article 5, and provide that any member who has been such for six months and is taken sick or disabled and is unable to follow his usual or other occupation of any kind shall be entitled to receive two dollars for the first week and four dollars for thirteen weeks thereafter, benefits not to exceed fourteen weeks in any one year "provided said sickness or disability does not proceed from intemperance or other immoral conduct or does not result from disease contracted or that may have manifested itself prior to his initiation."

It appears from the testimony taken that Mr. Pietsch paid his dues of two dollars and twenty-five cents quarterly until the June (1910) quarter, and on September 2nd, 1910, he was declared non-beneficial in the council and the recording secretary notified the secretary manager of the General Benefit Department to drop the name of Pietsch from the roll. On September 9th, 1910, Pietsch paid his arrears for the June quarter, and also the amount to be due the quarter ending the last of September. Three months thereafter, December 9th, 1910, Pietsch, having then again become beneficial, the recording secretary directed the secretary-manager of the Funeral Benefit Department to re-enroll Pietsch,

at the same time certifying that he was in sound bodily health. This was accordingly done. On December 30th, 1910, Pietsch was reported sick to the Council, and on February 3rd, 1911, by action of the Council, five (5) weeks' sick benefits were paid him.

It further appears from the testimony that up until the 26th of October, 1910, Pietsch had been engaged at his usual occupation and that on that day he went to the Municipal Hospital in Baltimore and did not return home until February 25th, and died on February 27th, 1911, of tuberculosis.

Although there were several exceptions taken to the rulings of the lower Court, on questions of evidence, they all revolve about, and refer to practically one point; and upon the determination of this point depends the correctness or incorrectness of all of the Court's rulings, both as to the exceptions to the evidence, as well as to the prayers. In the settlement of this question there are no legal differences between the parties, but the difficulty arises over what is the true construction of the laws governing these different departments, created under the constitution of this appellant, as applicable to the facts of this case.

The theory upon which the appellant resists this claim is, that since Pietsch had been dropped from the roll of the Funeral Benefit Department, for non-payment of dues to his Council for a period of thirteen weeks, he could not be reinstated therein unless at that time he was in sound bodily health; and that the fact that he was at that time confined to a hospital, suffering from tuberculosis, from which he subsequently died, was evidence tending to show that the certificate of the recording secretary, stating him to be in sound bodily health, was a mistake in fact. The lower Court declined to take this view, and refused to admit testimony bearing upon the health of Pietsch at the time he became beneficial in the Council and when he was re-enrolled in the Funeral Benefit Department, and granted instructions to the effect that if the jury found that at the time the

arrearages were paid on September 9th, 1910, Pietsch was in apparent good health and that from that time until his death he was not in arrears for one quarter's dues and that he was a beneficial member of the Council at the time of his death and had been re-enrolled in the Funeral Benefit Department, that then the appellee was entitled to a verdict. The practical effect of the instructions was, since the other facts were conceded, that the appellee was entitled to recover unless the appellant could show by a preponderance of the evidence that Pietsch was suffering with the disease which caused his death at the time he was admitted to the order.

We are of the opinion that the view of the lower Court is borne out by a study of the laws of the different departments.

By the Constitution of the National Council, the Constitution and the laws enacted thereunder by the National Council shall be the supreme law of the Junior Order United American Mechanics; and by Division 4, Chapter 5, section 1, it provides: "As a member shall stand in his Council so shall he stand throughout the order, etc." In the book entitled "Revised Laws of the Funeral Benefit Department of the National Council Junior Order United American Mechanics," sections 5-8, inclusive, are under the heading of the word "Application." Section 6 furnishes a form to be used by a council in making application for membership and contains the following provision: "We hereby agree to make no claim on you for benefits upon the death of any brother who is not in good standing in the Council at the time of his death or who is not entitled to death benefits according to the constitution and by-laws of this Council, nor who may be sick or disabled at the time of admission of this Council in the Funeral Benefit Department, nor who has engaged in the liquor business contrary to the laws of the order, nor for benefits upon the death of any member from a disease which may have demonstrated itself prior to his admission to the order or reinstatement therein. * * * We hereby agree that no benefits shall be paid where the deceased has been

received to membership in violation of the laws and decisions of the order, or where the disease or disability which caused death demonstrated itself prior to the member's admission to the Funeral Benefit Department." Section 8 is as follows: "Only beneficial members of Jr. O. U. A. M. in good standing, not over fifty-five years of age at last birthday, and who became beneficial members when under fifty years of age, and who are in sound bodily health, may be enrolled in the Funeral Benefit Department, and none other shall be included in the list furnished by the recording secretary when making application for membership, or at any time thereafter." Under section 14, "Good Standing," is defined as follows: "No member who is in arrears for dues for thirteen weeks at the time of his death or at the time he become sick or disabled shall be entitled to death benefits, and no member who is thirteen weeks or over in arrears for dues at the time he becomes sick or disabled can place himself in good standing or become entitled to benefits during such disability by paying up such arrearages in part or in full during the continuance of such sickness or disability."

It will be noticed from the quotation above of section 6 that the Council agrees not to make any claim for benefits "upon the death of any member from a disease which has demonstrated itself prior to his admission to the order or reinstatement therein." The latter part of the section has no force here because Pietsch's admission in both was at the same time. In our opinion under the wording of this section the Court was absolutely correct in ruling as it did. There was not a particle of proof that the disease which eventually caused the death of Pietsch had demonstrated itself prior to his admission. Nor could it be considered as showing itself before he was reinstated, for he never was in a position to be reinstated. The fact that he was non-beneficial did not mean that he was out of the order but that while he was still a member he could not draw benefits. This is made clear by Articles 12 and 13 of the By-Laws of Liberty Bell Council. By section 1 of Article 12 the only penalty

for being in arrears for thirteen weeks is that the member is "disqualified from receiving sick or death benefits for the space of three months after paying all arrears to date." But section 1 of Article 13 provides: "Any brother owing six months' dues shall be *suspended*" and section 2 deals with the method of re-instatement after a suspension. So to our minds, under the meaning of the By-Laws, Pietsch never was in the class provided for by the clause of section 6 "from a disease which may have demonstrated itself prior to his re-instatement." If then at the time of his death he was beneficial under his council then he was entitled to have his name enrolled in the Funeral Benefit Department irrespective of whether or not he was in sound bodily health at the time of his re-enrollment, provided he was not sick nor disabled at the time he paid his arrearages on September 9th, 1910.

The appellant contends that section 8, quoted above, is the section that should govern and makes the point that the concluding words "or at any time thereafter" mean that the member to be re-enrolled are to have the qualifications as to health, etc. We cannot agree to this contention. The section is dealing, just as did section 6, with the application of the council to become a member of the Funeral Benefit Department, and is an instruction to the recording secretary as to what members of the council can become enrolled and finally concludes with notice that, hereafter, meaning of course after the council has become a member, all new members taken into the council will have to conform to the health and other requirements before they can become enrolled as members of the Funeral Benefit Department.

Finding no errors in the rulings of the lower Court the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*